NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JOSEPHINE AMATELLI, PETITIONER, v. JAVAS BREAD COMPANY, INCORPORATED, RESPONDENT.

Decided December 23, 1937.

For the petitioner, *Richard H. Cashion.*

For the respondent, *Stanley U. Phares.*

\*     \*     \*     \*     \*     \*     \*

It was stipulated and agreed between counsel that petitioner, Josephine Amatelli, is the widow of Frank Amatelli, and that they were lawfully married on June 28th, 1924, and that the three children mentioned in the petition are the issue of the marriage; that said Frank Amatelli was regularly employed by the respondent, Javas Bread Company, Incorporated, as a driver and his average weekly wages, based on flat wage and commissions, amounted to $25.69 per week, and that on February 11th, 1937, he met with his death by reason of an accident arising out of and in the course of his employment, and that notice of the happening of said accident was given to the respondent on the same day.

On behalf of the petitioner, Josephine Amatelli testified as follows:

That she and her husband had marital difficulties as early as September 4th, 1935, and that they voluntarily separated,

by agreement, and lived apart, and that thereafter and from time to time they were temporarily reconciled and lived together for short periods of time, and then eventually separated permanently some time prior to June, 1936.

That on June 2d, 1936, by agreement between said Josephine Amatelli and her husband, the children were entered into an orphanage conducted by a lodge of which petitioner was a member, and known as "The Sons of Italy." That the children entered the asylum on June 2d, 1936, where they have continued to reside up to the present time, and where they have been clothed and provided for, and also given an education. That decedent agreed to contribute the sum of $9 a week for the support of the children at the orphanage, but that he paid but $7 per week up to the time of his death, being in arrears on different occasions, some of which arrears have not been paid to date. The payments made were received by the said Josephine Amatelli from the overseer of the poor to whom decedent paid weekly, and that these checks were endorsed over to the orphanage. That in addition to the $7 actually paid, extra clothing was brought to the institution and that the money used to purchase the clothing was contributed by the deceased in addition to the weekly contribution.

Josephine Amatelli further testified that the deceased also contributed to her support to the extent of $5 per week, and that before the death of her husband she was employed in the capacity of a female orderly at the City Hospital, where she received $48 per month as wages.

By consent of counsel there was admitted into evidence a statement of one, Miss Turi, in charge of the orphanage, in so far as the same might be evidential and relevant and from which it appears that the amount fixed by the orphanage of $9 per week, being the cost of maintaining the three children, was far less than the actual cost *pro rata* for each child to the institution, and it is the respondent's contention that the amounts contributed by the deceased were inadequate and did not fully support the children in the sense that they were totally dependent upon him.

After careful consideration of the evidence, I find and determine that the petitioner has sustained the burden of proof and feel, from the evidence, that the only claim to support respondent's contention is that there was a deficit between the $9 per week, which was the charge of the orphanage, and the $7 per week which the deceased actually contributed. I feel that the failure of the deceased to pay the full $9 per week was something he himself was responsible for, and that the orphanage would have a claim against his estate for any deficit on his contract with the orphanage for which he was personally responsible, and I do not feel that because of this unfortunate situation, the children should be taken from one status into another, nor do I feel that the fact that the mother might have brought the children extra clothing or gifts should, of itself, disturb the said status.

It overwhelmingly appears to my satisfaction that the children were supported entirely by the deceased, the father, and that the petitioner has sustained the burden of proof in establishing total dependency on the part of the three children, and partial dependency for herself to the extent of $5 per week.

I find and have computed the total dependency of the three children to be equivalent to forty-five per cent. of the wages stipulated to have been received, and which percentage amounts to $11.56. If there were four total dependents, in this case there happens to be but three and one partial; the amount computed on the same wage scale would be $12.84. Therefore the rate will be somewhere between three total and that allowed for four total dependents, but because the act, under which payments are to be made in this case, does not provide a particular system where dependents are both partial and total, I figure that the amount to be allowed to all dependents, including the mother, will be equivalent to $12 per week and that the amount to be set aside as the petitioner's share, as a partial dependent, will be $1.75 per week. which will leave for the children, three in number, the sum of $10.25 per week. This compensation will run for a period of three hundred weeks at which time the widow will be elimi-

nated as a dependent, and then the amount will be $11.56 per week until the son, Louis Amatelli, reaches the age of sixteen years; thereafter and until the son, Nicholas Amatelli, reaches the age of sixteen years, the amount will be $10.28 per week; and thereafter and until the son, Frank Amatelli, reaches the age of sixteen years, the amount will be $10 per week.

I further find that there were no medical expenses for the last illness as the deceased was killed instantly, or died a short time after the accident.

I will allow $150 for funeral expenses, payable by the respondent, and will allow to Richard H. Cashion, Esq., attorney for petitioner, the sum of $400, it appearing that the respondent at no time controverted the liability feature but merely questioned the nature and the extent of the dependency. This allowance to counsel is to be assessed against the respondent, as well as the stenographic fees.

\* \* \* \* \* \* \*

JOHN J. STAHL,
*Deputy Commissioner.*