558 S.E.2d 681

**Patricia Lou BRADSHAW, Administratrix of the Estate of James J. Bradshaw and Patricia Lou Bradshaw, individually, Plaintiff Below, Appellant,**

v.

**David L. SOULSBY, M.D., A.C. Velasquez, M.D., Alberto C. Lee, M.D., and Kenneth McNeil, M.D., Defendants Below, Appellees.**

No. 29004.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Dec. 10, 2001.

Dissenting Opinion of Justice Maynard Dec. 12, 2001.

Sean P. McGinley, Esq., L. Dante DiTrapano, Esq., Mary Sadd Blaydes, Esq., DiTrapano, Barrett & DiPiero, PLLC, Charleston, for the Appellant.

Jeffrey M. Wakefield, Esq., Elizabeth S. Cimino, Esq., Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, for Appellee David L. Soulsby, M.D.

Sprague W. Hazard, Esq., Charleston, for Appellee A.C. Velasquez, M.D.

Thomas J. Hurney, Esq., Rob J. Aliff, Esq., Jackson & Kelly, PLLC, Charleston, for Appellee Alberto C. Lee, M.D.

D.C. Offutt, Jr., Esq., Offutt, Fisher & Nord, Huntington, for Appellee Kenneth McNeil, M.D.

STARCHER, Justice.

In this appeal from the Circuit Court of Kanawha County, the appellant challenges the circuit court's dismissal of her wrongful death action. The circuit court ruled that the discovery rule does not apply to toll the 2–year statute of limitation in wrongful death actions, and concluded that the appellant's lawsuit—which was filed 2 years and 3 days after the decedent's death—was untimely.

As set forth below, we reverse the circuit court's dismissal order, and hold that the discovery rule may be applied to toll the statute of limitation in wrongful death actions.

## I.

### Facts & Background

The appellant, Patricia Lou Bradshaw, filed a wrongful death complaint in the instant action individually and as the administratrix of the estate of her husband, James J. Bradshaw. On October 17, 1997, Mr. Bradshaw died due to an overdose of the prescription drug propoxyphene, also known as Darvocet.

The appellant's complaint alleged that Mr. Bradshaw had a longstanding history of abusing controlled prescription drugs. The appellant's complaint further alleged that Mr. Bradshaw's treating physicians—appellees David L. Soulsby, A.C. Velasquez, Alberto C. Lee, and Kenneth McNeil—knew about Mr. Bradshaw's history of drug abuse. The appellant contended that because of the foreseeability that Mr. Bradshaw might take a lethal overdose of drugs, the appellees breached their duty of care to Mr. Bradshaw by prescribing for him narcotics and other controlled substances, including propoxyphene.

The appellant states that on October 17, 1997, she was unaware of the cause of Mr. Bradshaw's death. An autopsy was performed, and on October 20, 1997, the appellant contends that she first learned that her husband had died as the result of an overdose of a drug that was prescribed by the appellees.

The appellant filed the instant wrongful death action on October 20, 1999, 2 years and 3 days after Mr. Bradshaw's death. The appellees filed motions to dismiss the action, contending it was barred by the 2–year statute of limitation contained in the wrongful death act, *W.Va.Code*, 55–7–6(d) [1992]. The appellant countered that she did not discover the existence of a wrongful death cause of action until she learned of the autopsy results on October 20, 1997, and therefore took the position that the 2–year period was not triggered until that date under the "discovery rule."

In an order dated February 14, 2000, the circuit court concluded that the discovery rule does not apply to wrongful death actions. The circuit court relied upon our holding in *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991), where we stated at Syllabus Point 2 that the statute of limitation in wrongful death actions "is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented." The circuit court therefore dismissed the appellant's action against the appellees as barred by the statute of limitation.

The appellant now appeals the circuit court's February 14, 2000 order.

## II.

### Standard of Review

▮ In the instant case, the circuit court granted the appellees' motion to dismiss the appellant's complaint. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

## III.

### Discussion

We begin our discussion by noting that no discovery was conducted upon the appellant's complaint. On the limited record presented, we are therefore not called upon to address the merits of the appellant's claims. We are asked only to examine the propriety of the circuit court's dismissal of the appellant's wrongful death action under the 2–year statute of limitation in *W.Va.Code*, 55–7–6(d) [1992].

Whenever the death of a person is "caused by wrongful act, neglect, or default," West Virginia's wrongful death statutes allow certain individuals to bring actions to hold the party who caused the death liable. *See W.Va.Code*, 55–7–5 to –7. The statute of limitation, found in *W.Va.Code*, 55–7–6(d), re-

quires that "[e]very such action shall be commenced within two years after the death of such deceased person[.]" [1]

In the instant action, the appellant contends that the running of the 2–year limitation period should be "tolled" through the operation of the "discovery rule." Under the discovery rule, a statute of limitation is tolled and does not begin to run until a claimant knows or by reasonable diligence should know of his claim. Syllabus Point 1, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition of its application." Syllabus Point 2, *Cart v. Marcum*. We clarified the elements a person must show to benefit from the equitable provision of the discovery rule in Syllabus Point 4 of *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997):

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

The appellant argues that there is no clear statutory prohibition to the application of the discovery rule to tort actions filed under the wrongful death act. The appellant further argues that a plaintiff does not have the ability or an obligation to file an action for wrongful death until he or she knows, or by reasonable diligence should know, that the death was caused by a particular individual's wrongful act.

In support of her argument, the appellant directs our attention to cases from other jurisdictions where courts have ruled that the discovery rule applies to wrongful death ac-

tions. *See Collins v. Sotka*, 81 Ohio St.3d 506, 692 N.E.2d 581 (1998) (overruling 1991 case, court held discovery rule applied to wrongful death actions, and wrongful death claim did not accrue until court sentenced defendant for decedent's death); *Hanebuth v. Bell Helicopter International*, 694 P.2d 143 (Alaska 1984) (discovery rule tolled statute of limitation, and wrongful death claim did not accrue until helicopter wreckage and bodies of decedents were discovered 8 years after accident).

The appellees respond by arguing that this Court has previously rejected the application of the discovery rule to wrongful death actions, citing to *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991).

We must therefore revisit our decision in *Miller v. Romero* to determine whether the discovery rule can be used to toll the 2–year statute of limitation for a wrongful death claim contained in *W.Va.Code*, 55–7–6(d).

In *Miller v. Romero*, the Court addressed a situation where a doctor had allegedly committed malpractice in the treatment of a patient, but then concealed the reasons for the patient's death from her parents. The doctor had apparently gone so far as to attribute the patient's death to "God's will," and paid part of the family's funeral bills. The patient's parents did not learn that their daughter's death might have been the result of the doctor's error, and did not file a wrongful death action, until nearly 3½ years after their daughter died. 186 W.Va. at 524, 413 S.E.2d at 179.

In *Miller v. Romero*, the Court was asked, in a certified question from the circuit court, to determine if the 2–year limitation period could be tolled by the discovery rule. We stated that "a wrongful death action is not a right which was recognized at common law," but is instead "a legislatively created right." 186 W.Va. at 526, 413 S.E.2d at 181. We concluded that the 2–year time limitation is a "condition precedent to the bringing of [a wrongful death] action," and therefore "[t]he

---

1. *W.Va.Code*, 55–6–7(d) states:
 Every such action shall be commenced within two years after the death of such deceased person, subject to the provisions of section eighteen, article two, chapter fifty-five. The

provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eighty-eight.

statute cannot be interpreted under common law." 186 W.Va. at 526–27, 413 S.E.2d at 181–82. We have interpreted this portion of *Miller v. Romero* as meaning that "the discovery rule does not operate to toll the two-year filing period for wrongful death claims." *Harrison v. Davis,* 197 W.Va. 651, 660, 478 S.E.2d 104, 113 (1996). *See also, Pennington v. Bear,* 200 W.Va. 154, 488 S.E.2d 429 (1997).

■ However, the Court went on to state that it was "troubled by the potential inequity in cases where a physician actively conceals malpractice from the decedent's representatives." 186 W.Va. at 527, 413 S.E.2d at 182. The Court believed that restricting the decedent's representatives from filing an action under such circumstances would be "contrary to both the remedial purpose of this statute and the public policy of this State to provide equity for those injured by the negligence of another." *Id.* On these facts, the Court ruled that the 2–year period could be equitably extended under some circumstances:

> The two-year period which limits the time in which a decedent's representative can file suit is extended only when evidence of fraud, misrepresentation, or concealment of material facts surrounding the death is presented.

Syllabus Point 2, *Miller v. Romero.*

After a careful reading of *Miller v. Romero,* it is clear the case is internally contradictory and fundamentally flawed in its reasoning. On the one hand, the case holds that "the right to sue for a wrongful death is created purely by statute"—and therefore, the wrongful death statutes cannot be interpreted under the common law to include any equitable tolling provision. But on the other hand, the case holds that it would be "contrary to both the remedial purpose of this statute and the public policy of this State" to allow a tortfeasor to avoid a wrongful death action through fraud, misrepresentation or concealment—and therefore interprets the wrongful death statutes to include an equitable, common law tolling provision. These opposing positions are inconsistent—either the statute of limitation in wrongful death actions can, or it cannot, be construed to include an equitable, common law tolling provision. *Miller v. Romero* takes both positions.

We must therefore examine the statute of limitation for a wrongful death action contained within *W.Va.Code,* 55–7–6(d) in light of the standard rules of statutory interpretation.

■ The essential, beneficial purpose of the wrongful death act is "to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death." *White v. Gosiene,* 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992). *See also, Walker v. Walker,* 177 W.Va. 35, 350 S.E.2d 547 (1986); *Wilder v. Charleston Transit Co.,* 120 W.Va. 319, 197 S.E. 814 (1938); *Swope v. Keystone Coal & Coke Co.,* 78 W.Va. 517, 89 S.E. 284 (1916); *Richards v. Riverside Iron Works,* 56 W.Va. 510, 49 S.E. 437 (1904).

■ We have repeatedly recognized that because the wrongful death act alleviates the harshness of the common law, it is to be given a liberal construction to achieve its beneficent purposes. *See, e.g., Farley v. Sartin,* 195 W.Va. 671, 680, 466 S.E.2d 522, 531 (1995) ("[O]ur prior decisions ... firmly established that W.Va.Code, 55–7–5, is a remedial statute and should be liberally construed."); *Martin v. Smith,* 190 W.Va. 286, 292, 438 S.E.2d 318, 324 (1993) ("West Virginia's wrongful death statute is remedial, and is liberally construed to effect the Legislature's intent."); *Baldwin v. Butcher,* 155 W.Va. 431, 184 S.E.2d 428 (1971); *City of Wheeling ex rel. Carter v. American Casualty Co.,* 131 W.Va. 584, 590, 48 S.E.2d 404, 408 (1948) ("The statute, being remedial, should be liberally construed."); *Wilder v. Charleston Transit Co.,* 120 W.Va. 319, 322, 197 S.E. 814, 816 (1938) ("The policy of the statute is remedial and not punitive."); *Richards v. Riverside Iron Works,* 56 W.Va. 510, 515, 49 S.E. 437, 438 (1904) ("The statute is remedial, and should be construed liberally for the purpose of carrying out the legislative intent.").

We have consistently "given more than lip service to this rule of liberal construction." *Bond v. City of Huntington,* 166 W.Va. 581, 586, 276 S.E.2d 539, 542 (1981). As one

commentator states, in examining the wrongful death acts of other states:

> [Wrongful death statutes] represent a remedial policy that has become firmly imbedded in modern jurisprudence. Where the extent of the damages recoverable for wrongful death is measured by the actual injury sustained, these statutes should be liberally construed to accomplish their remedial purpose. But many of the decisions in the past, and a few of the later ones as well, have crippled the operation of the legislation by employing a narrow construction on the basis that these statutes are in derogation of the common law. The modern authorities are in agreement that the objective and spirit of this legislation should not be thwarted by a technical application.

3A *Sutherland Statutory Construction* § 71.05 (5th Ed.1992). We must therefore endeavor to ensure that the objective and spirit of our wrongful death act is not "thwarted by a technical application."

Many of our prior decisions examining the 2–year time limit contained in *W.Va.Code*, 55–7–6(d) have ignored the remedial nature of our wrongful death act, and found—because the act is in derogation of the common law—that the limitation period is an element of a wrongful death cause of action. *Miller v. Romero* is founded upon many of these cases. For example, in *Lambert v. Ensign Manufacturing Co.*, 42 W.Va. 813, 26 S.E. 431 (1896), we held that because a wrongful death cause of action did not exist at common law, the 2–year limitation period "is made an essential element of the right to sue, and it must be accepted in all respects as the statute gives it. And it is made absolute, without saving or qualification of any kind whatever." 42 W.Va. at 817, 26 S.E. at 431. *See also, Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973); *Smith v. Eureka Pipe Line Co.*, 122 W.Va. 277, 8 S.E.2d 890 (1940).

Each of these earlier decisions is premised solely on the wrongful death act being in derogation of the common law, and each then proceeds to give the 2–year limitation contained in *W.Va.Code*, 55–7–6(d) a narrow construction. We believe this reasoning is improper because the wrongful death act is plainly a remedial enactment entitled to a liberal construction. We therefore reject this line of cases, and determine that we should examine the wrongful death act in light of its remedial purposes.

■ To maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default. The statute creating a wrongful death cause of action, *W.Va.Code*, 55–7–5 [1931], states simply:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

We have interpreted this language to mean that:

> Under the express provisions of the wrongful death statute, in order to maintain an action for wrongful death there must be the death of a person and the death must be caused by such wrongful act, neglect or default as would, if death had not ensued, have entitled the party injured to maintain such action to recover damages for such wrongful death.

*Baldwin v. Butcher*, 155 W.Va. at 437, 184 S.E.2d at 431–32.

■ We find nothing in the language of *W.Va.Code*, 55–7–5 which explicitly makes the limitation period a condition precedent to the filing of an action. "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v.*

*Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996). *W.Va.Code,* 55–7–5 does not, as an element of the cause of action, require an action to be filed within 2 years, and we decline to read into the statute something which it does not say.

A separate statute, *W.Va.Code,* 55–7–6, sets forth a list of the beneficiaries of a wrongful death action and the aforementioned 2–year time limit within which they must file an action. We cannot conceive of how a beneficiary could be required to bring an action—within 2 years of a person's death—without knowledge that the person has died, without knowledge that the death was caused by the wrongful act, neglect, or default of another individual, or without knowledge of the identity of that individual. It is precisely these situations, where a beneficiary reasonably lacks knowledge of these elements necessary to prove a case, where the discovery rule was intended to apply.

Cases from other jurisdictions set forth factual scenarios where harsh and absurd outcomes would have resulted, if the discovery rule had not been applied to toll the statute of limitation in a wrongful death action. One example comes from Alaska, where the plaintiff's decedents were killed in a helicopter crash in a remote area, and the wreckage—as well as a mechanical defect caused by the defendant helicopter manufacturer—was not discovered for 8 years. *Hanebuth v. Bell Helicopter International,* 694 P.2d 143 (Alaska 1984). *See also Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (1976) (plane crashed in remote area and was not found until 2 years and 8

months later). Another example is where the plaintiffs' decedent was killed in a car wreck caused by a drunk driver, but the body not identified for nearly 3 years. *Myers v. McDonald,* 635 P.2d 84 (Utah, 1981).[2] And the most extreme example is where the plaintiff's decedent was murdered, and either the body not discovered or the murderer not identified for several years. *Collins v. Sotka,* 81 Ohio St.3d 506, 692 N.E.2d 581 (1998)[3]. *See also Fulton Co. Adm'r v. Sullivan,* 753 So.2d 549 (Fla.1999); *Allred v. Chynoweth,* 990 F.2d 527 (10th Cir. 1993); *Howell v. Murphy,* 844 S.W.2d 42 (Mo.App.1992). These courts recognized that it is "profoundly unfair to deprive a litigant of his right to bring a lawsuit before he has had any reasonable opportunity to do so." *Hanebuth,* 694 P.2d at 147. These courts therefore allowed the plaintiffs to benefit from the equitable effects of the discovery rule, and allowed the statute of limitation to be tolled until the plaintiffs discovered the wrongful death of their decedent.

 Examining our wrongful death statutes, we find no clear statutory prohibition to the application of the discovery rule to *W.Va.Code,* 55–7–6(d). We therefore conclude that the discovery rule, as set forth in *Gaither v. City Hospital, supra,* applies to actions arising under the wrongful death act. To the extent that *Miller v. Romero, supra,* conflicts with this holding, it is overruled. In a wrongful death action, under the discovery rule, the statute of limitation contained in *W.Va.Code,* 55–7–6(d) begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know

**2.** In *Myers,* the plaintiffs were the guardians of a 14–year–old boy named "Bobbie." When the boy disappeared, the police listed the boy as a "runaway" rather than a "missing person," which would have resulted in an automatic check of the local morgue. The boy had been killed while riding as a passenger in a car that collided with a large tree, and was identified as "Joey." The plaintiffs were not taken to the morgue, and did not identify the boy, until nearly 3 years later. On these facts, the Utah Supreme Court found that the plaintiffs' wrongful death cause of action against the drunk driver of the car did not accrue until they discovered the death of the boy.

**3.** In *Collins,* the plaintiff's decedent was abducted and murdered, and her body found 5 months

later. Two months after the body was found, the defendant was indicted and pled guilty. The plaintiff filed a wrongful death action 2 years after the defendant was sentenced—but 2 years and 7 months after the decedent's death. The Ohio Supreme Court applied the discovery rule to the 2–year statute of limitation to "prevent inequities that occur when a statute of limitations is rigidly followed." *Collins,* 81 Ohio St.3d at 510, 692 N.E.2d at 584. The court concluded:

It is illogical to penalize the victim's survivors, who have already suffered a great loss, by shortening or extinguishing the time in which they may bring a wrongful death lawsuit. To do so merely rewards the criminal defendant.

(1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.

If we were to continue to apply the reasoning used in *Miller v. Romero*, and the discovery rule was not applied to wrongful death actions, "a tortfeasor whose conduct has been so grievous as to cause death would be exonerated, while another tortfeasor, guilty of the same conduct except for the fortuity that it merely caused injury, would be held responsible." *Hanebuth*, 694 P.2d at 147. We refuse to attribute to the Legislature any intent to adopt such an irrational result.

■ In the instant case, the record suggests that the appellant first discovered that her husband's death may have been caused by the wrongful act, neglect or default of the appellees on October 20, 1997. Accordingly, under the discovery rule the wrongful death action filed by the appellant on October 20, 1999 was timely, and the circuit court erred in dismissing the plaintiff's action.

### IV.

#### Conclusion

The February 14, 2000 order of the circuit court is reversed, and the case remanded for further proceedings.

Reversed and Remanded.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Justice, dissenting.

(Filed Dec. 12, 2001)

The majority decision in this case violates both the settled law of this Court and the principles of sound reasoning.

The doctrine of *stare decisis* mandates that we follow this Court's unanimous opinion in *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178 (1991), in deciding this case. *Stare decisis* rests upon the important principle that the law by which people are governed should be "fixed, definite, and known," *Booth v. Sims*, 193 W.Va. 323, 350 n. 14, 456 S.E.2d 167, 194 n. 14 (1995) (citation omitted), and not subject to frequent modification in the absence of compelling reasons. Of course, this Court does not blindly adhere to precedent in every case. "[A]s a practical matter, a precedent-creating opinion that contains no extensive analysis of an important issue is more vulnerable to being overruled[.]" *State v. Guthrie*, 194 W.Va. 657, 679 n. 28, 461 S.E.2d 163, 185 n. 28 (1995). However, the indepth analysis in *Miller* remains as valid today as it was when that opinion was handed down. In *Miller*, we explained:

The plaintiff's argument for extending the time limitations for wrongful death cases ignores a crucial line of West Virginia case law interpreting our wrongful death act. This Court has held that, unlike a malpractice or negligence action, a wrongful death action is not a right which was recognized at common law. . . .

Without an underlying common-law basis, wrongful death is a legislatively created right.

*Miller*, 186 W.Va. at 525–26, 413 S.E.2d at 180–81. The wrongful death act's legislative origins are significant because,

the two year limitation upon the bringing of an action for wrongful death is *an integral part of the statute itself and creates a condition precedent to the bringing of an action.* The condition is made absolute and, strictly speaking, is not a statute of limitations. The time fixed by the statute creating the right is one of the components entering into the plaintiff's right of recovery. Once the statutory period expires, there remains no foundation for judicial action.

*Huggins v. Hospital Bd. of Monongalia County*, 165 W.Va. 557, 560, 270 S.E.2d 160, 162–63 (1980) (citations omitted) (emphasis added), *superseded on other grounds by rule as stated in Winston v. Wood*, 190 W.Va. 194, 437 S.E.2d 767 (1993).

There has been no change in the wrongful death act since *Miller* that warrants a reconsideration of the issue before us. *Miller* is well reasoned, in accord with a long line of case law, and consistent with a significant number of cases in other jurisdictions. *See, Morano v. St. Francis Hospital*, 100 Misc.2d

621, 420 N.Y.S.2d 92 (1979); *Eldridge v. Eastmoreland General Hospital,* 307 Or. 500, 769 P.2d 775 (1989), *superseded by statute as stated in Kambury v. DaimlerChrysler Corp.,* 173 Or.App. 372, 21 P.3d 1089 (2001); *Fowles v. Lingos,* 30 Mass.App.Ct. 435, 569 N.E.2d 416 (1991); *Moyer v. Rubright,* 438 Pa.Super. 154, 651 A.2d 1139 (1994); *Corkill v. Knowles,* 955 P.2d 438 (Wyo.1998); *Gray v. Com., Transp. Cabinet Dept. of Highways,* 973 S.W.2d 61 (Ky.Ct.App.1997); *Schultze v. Landmark Hotel Corporation,* 463 N.W.2d 47 (Iowa 1990); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348 (Tex.1990); *Leo v. Hillman,* 164 Vt. 94, 665 A.2d 572 (1995); *Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446 (1985); and *Miles v. Ashland Chemical Co.,* 261 Ga. 726, 410 S.E.2d 290 (1991). Accordingly, there is no sound reason for this Court to overrule *Miller.*

In addition, the majority opinion ignores clear statutory language. It is fundamental that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). Also, "[c]ourts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed." Syllabus Point 1, *id.*

W.Va.Code § 55–7–6(d) unequivocally provides that "[e]very such action shall be commenced within two years after the death of such deceased person[.]" This code section unambiguously provides that death is the event that triggers the running of the two-year limitation period. There is no blank in this code section for this Court to fill in. Accordingly, the Court should apply the code section as it is written and resist the temptation to expand its meaning.[1]

Moreover, the majority's application of the discovery rule to a wrongful death action is superfluous. Unlike situations where the injured party is not aware of the injury when it occurs, such as *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992), or is aware of the injury but is blamelessly ignorant of its true cause, as *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997), an allegedly wrongful death puts any person possessing common knowledge and experience on notice that a possible cause of action exists at the time of death. In other words, the time of death indicates an obvious starting point for inquiry regarding the cause of the decedent's death so that there is no reason for a discovery rule.

Further, even if I were to believe that the discovery rule should be applied to wrongful death actions, and that this Court had the power to do so, this is the wrong case in which to change the law. There was absolutely no reason for the appellant in this case to file her wrongful death action outside of the two-year limitation period. The facts show that the appellant's decedent died on October 17, 1997. Just three days later, on October 20, 1997, after an autopsy was performed, the appellant learned that her husband died as the result of an overdose of a drug that was prescribed by the appellees. Nevertheless, she waited until October 20, 1999, two years and three days after the decedent's death, to bring a wrongful death action.

Finally, I am disturbed by this Court's continued expansion of the discovery rule and the concomitant erosion of statutes of limitations. This Court has recognized that "[t]he basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to

---

1. Notably, the Legislature has provided an exception to the two-year limitation period. According to W.Va.Code § 55–7–6(d), the limitation period is subject to the provisions of W.Va.Code § 55–2–18 which provide for a one-year extension of the applicable statute of limitations for instituting an action which was timely commenced in the circuit court and terminated during its pendency upon a ground not going to the

merits. *Taylor v. State Workmen's Compensation Com'r,* 152 W.Va. 609, 615, 165 S.E.2d 613, 615 (1969). This Court has said that W.Va.Code § 55–2–18 "is designed to remedy the harsh effect of the statute of limitations and to save a cause of action which is otherwise barred." *McClung v. Tieche,* 126 W.Va. 575, 577–78, 29 S.E.2d 250, 251 (1944).

assert them." *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965) (citations omitted). The majority opinion further impedes these laudable purposes.

In conclusion, the majority opinion needlessly overrules recent precedent of this Court; ignores the clear language of W.Va. Code § 55–7–6(d); disregards the plain intent of the Legislature; and further eviscerates statutes of limitations. The opinion crafted by the majority will do nothing to advance the interests of diligent plaintiffs, while providing aid to dilatory and apathetic ones. Accordingly, I dissent to the majority opinion. I am authorized to state that Justice Davis joins me in this dissent.